Denio, C. J.
The village of Corning was incorporated pursuant to the provisions of the general act “ to provide for the incorporation of villages.” (Laws 1847, ch. 426.) The charter was twice amended. (Laws 1851, 612; Laws 1852, 48.) The questions presented by the case are, First. Whether the trustees had authority to pass the by-law for the violation of which the defendant was prosecuted ; and Secondly. Whether the magistrate had jurisdiction of the prosecution.
The general law for the incorporation, of villages, authorizes the trustees, of the corporations which maybe organised, to make by-laws to carry into effect the provisions of the act, “ and of other laws- applicable to such village,” “ and to prescribe penalties not exceeding twenty-five dollars for any violation of any such by-law;” but it is added that “ no such by-law shall prescribe any penalty for any act that shall be prohibited and for doing which a penalty shall be prescribed by the laws of the state.” (§57, subd. 25 ) The general power seems sufficient; but an objection is
*299 made by the defendant’s counsel, that the Revised Statutes prohibit, under a penalty, the same identical act which the by-law in question is leveled against. (1 R. S., 680, § 16.) This objection would be fatal if the case rested upon the general act; but the amendment of 1851 provides that “ the trustees shall have power to regulate or prohibit the sale of intoxicating liquors as a beverage in said village ” (§4.) and also to pass, ordinances regulating taverns, groceries, ordinaries, victualing or eating houses or establishments, and petty groceries, &c. (§ 6, subd. 10.) These enactments are a repeal pro tanto of the prohibitory clause quoted from the general act; and they fully warranted the making of the by-law under consideration.
It is argued that the legislature had no constitutional power to provide for the appointment of a police justice in a village, with jurisdiction to try and determine civil actions In support of this position it is maintained that the sixth article of the constitution makes express provision for all the courts of justice which it permits to be established in the state. The fact that a series of courts, from the court of impeachments down to the courts of justices of the peace, are required to be organized, by a necessary implication, as it is argued, excludes the power to create other courts, except in the single instance of city courts, provided for in section fourteen of that article. By that provision it is declared that “ Inferior local courts of civil and criminal jurisdiction, may be established by the legislature in cities; and such courts, except in the cities of New-York and Buffalo, shall have a uniform organization in such cities.” And this provision, according to the argument I am considering, greatly strengthens the implication, that except in cities no new courts can be created by the legislature. I am of the opinion that the provision respecting the higher courts, whose jurisdiction pervades the whole state, is exclusive in its character, and that no other courts of the same jurisdiction can be added by the legislature.
*300 Thus, there can be no Court of Impeachments, nor any Court of Appeals, or Supreme Court, nor I think-,- any county courts, except those which the constitution has made provision for; and it would be an evasion of the clear constitutional implication to create courts of the same general character and jurisdiction, though differing in some particulars. Nor could the legislature create local courts in cities, except in New-York and Buffalo, without giving them an uniform organization. I do not, however, see any prohibition against providing for the organization of local courts in villages. There is nothing in terms prohibitory of new courts in the constitution. It is not anywhere said that the judicial authority of the state shall be vested in the courts for which the constitution provides, though such phraseology is made use of in regard to the legislative power. (Art. 3, § 1; see Barto v. Himrod, 4 Seld., 483.) It is by the application of reasonable principles of construction that we are able to say that no tribunals fulfilling the general purposes of the constitutional courts, expressly provided for, can be erected. The maxim, expressio unius est exclmio alterius, applies directly to this case in that aspect; but that rule has no application to the case of local tribunals established for the purpose of redressing a certain description of grievances in particular limited localities. The state, as to subjects of a domestic nature, is a sovereign political power, and the legislature can provide such agencies for the administration of the law and the maintenance of public order as it shall judge suitable, where no prohibition, expressly made or necessarily implied, is found in the constitution. The eighteenth section of the sixth article favors the conclusion at which I have arrived. It declares that “ all judicial officers in cities and villages, and all such judicial officers as may be created therein by law, shall be elected,” See. But without reference to this clause I am of opinion that upon the general principles which I have stated, the legislature was not precluded from provid *301 ing for the organization of a local court in this village, having the power to hear and determine actions for penalties imposed by the by-laws of the village.
The remaining question is whether jurisdiction has really been conferred upon the magistrate to try the defendant on the complaint which was preferred against him ; and this is the most difficult point in the case. We must lay aside what is said, respecting a police justice, in the amendment of 1851. Those provisions were a plain violation of the constitution, for they authorized the trustees to appoint the justice; while the section of the constitution just referred to positively requires that all such officers in cities and villages should be “ elected, in such times and in such manner as the legislature shall direct.” The mode of appointment provided for being illegal, all the provisions conferring jurisdiction were equally void. The amendment of 1852 declared that a police justice should be elected in the village of Corning, but it did not, by reference or otherwise, adopt the provisions of the act of 1851, respecting the jurisdiction of the magistrate contained in that act. Though these provisions were in themselves nugatory, on account of the unconstitutionality of the mode of appointment of the officer, whose jurisdiction they attempted to define, it would have been competent for the legislature, when it provided a mode of appointment not forbidden by the constitution, to have transferred these provisions respecting jurisdiction to the new officer. But such is not the effect of the language made use of. The enactments of the former year respecting the police justice are not noticed, probably on account of their unconstitutionality; and the legislature begin anew with the declaration that “ there shall be elected in the village of Corning a police justice,” &c. (§1.) We must therefore look to the act of 1852, alone, for the powers of the officer. The name of police justice would not of itself suggest the idea of authority to try a civil action to recover a penalty, as *302 that class of officers have not ordinarily any jurisdiction in civil cases. But the act does clearly contemplate that the police justice is to possess the jurisdiction in question. The second section declares that “ In any action brought before said' police justice to recover a penalty imposed for the violation of any of the by-laws or ordinances of the said village, it shall only be necessary to state in the complaint the title and section,” &c. The evidence of the existence of the by-law is then provided for; and the next section requires the police justice to keep an office in the village, and “ attend to all. complaints which may be brought before him at. all reasonable hours,” &c. Other sections of the act confer jurisdiction upon the justice to cause arrests to be made in criminal cases; but what has been quoted is all that it contains respecting the jurisdiction in actions for penalties. It is clear enough that the legislature contemplated the exercise of this jurisdiction, although the authority is not directly conferred. I think we are warranted in carrying out the obvious intention of the act, though it is expressed thus incidentally. There are no provisions, either by reference to other statutes or otherwise, as to the form and manner of conducting the suits for penalties, except so far as the substance of the complaint is given in section two ; but I am of opinion that if jurisdiction is sufficiently conferred, the general rules of law applicable to all courts will enable the magistrate to administer justice in those cases without difficulty. The judgment ought to be affirmed.
Johnson, Paige, Shankland and Bowen, Js., concurred in this opinion.